**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 01, 2019.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| STEVEN JEFFREY CYR | § | CASE No. 18-50102-CAG |
| | § | |
| | § | **Chapter 7** |
| Debtor. | § | |

| | | |
|---|---|---|
| JOSE RODRIGUEZ, in his capacity as | § | |
| Chapter 7 Trustee of the Estate of | § | |
| Steven Jeffery Cyr | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 18-05227-CAG |
| | § | |
| LE ANN MARY CYR, Individually and | § | |
| in her capacity as Trustee of the | § | |
| Bergerud Heritage Trust | § | |
| | § | |
| Defendants. | § | |

### ORDER GRANTING IN PART, AND DENYING IN PART, THE TRUSTEE OF THE BERGERUD HERITAGE TRUST'S MOTION TO DISMISS THE ORIGINAL COMPLAINT OF PLAINTIFF JOSE RODRIGUEZ, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF STEVEN JEFFREY CYR (ECF NO. 72) AND

1

**DENYING LE ANN MARY CYR'S MOTION TO DISMISS THE ORIGINAL COMPLAINT OF PLAINTIFF JOSE RODRIGUEZ, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF STEVEN JEFFREY CYR (ECF NO. 99)**

On November 13, 2018, came on for hearing The Trustee of the Bergerud Heritage Trust's Motion to Dismiss the Original Complaint of Plaintiff Jose Rodriguez, In His Capacity as Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr (ECF No. 72) (the "BHT Trustee's Motion to Dismiss") and Le Ann Mary Cyr's Motion to Dismiss the Original Complaint of Plaintiff Jose Rodriguez, In His Capacity as Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr (ECF No. 99) ("Le Ann Cyr's Motion to Dismiss") (collectively, the "Motions to Dismiss"). Plaintiff, Jose C. Rodriguez, in his capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") filed his Response of Plaintiff Jose C. Rodriguez, in His Capacity of Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr, to Defendant's Motion to Dismiss (ECF No. 97) and Response of Plaintiff Jose C. Rodriguez, in His Capacity of Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr, to Defendant Le Ann Mary Cyr's Motion to Dismiss (ECF No. 103). The Trustee of the Bergerud Heritage Trust, Le Ann Mary Cyr (the "BHT Trustee"), filed her Reply to Response to Defendant's Motion to Dismiss (ECF No. 102). The Court set the matters for hearing, the Parties each appeared through counsel and presented argument, and the Court took the matters under advisement. After considering the arguments made and the pleading of counsel, as well as the file and record in the case, the Court finds that the BHT Trustee's Motion to Dismiss should be granted in part, and denied in part, and Le Ann Cyr's Motion to Dismiss should be denied.

## JURISDICTION

This Court has jurisdiction over these Motions to Dismiss pursuant to 28 U.S.C. §§ 1334(b), 157(b)(2)(A) (administration of the estate), and (H) (proceedings to determine, avoid, or recover fraudulent conveyances). Venue in this district is proper under 28 U.S.C. §§ 1408 and

1409. The statutory predicate for relief is Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding through Fed. R. Bankr. P. 7012 and Local Rule 7012.

## BACKGROUND

On January 20, 2018, Dr. Steven Jeffery Cyr ("Dr. Cyr" or "Debtor") filed bankruptcy under chapter 7 of the Bankruptcy Code (Case No. 18-50102). On June 15, 2018, the BHT Trustee filed this Adversary Proceeding seeking a determination of the Trustee's interest in the Bergerud Heritage Trust (the "BHT") (ECF No. 1). Subsequently, the Trustee filed his Unopposed Motion to Realign the Parties to correct the posture of the case so that the Trustee would be designated as the Plaintiff and the BHT Trustee would be designated as the Defendant (ECF No. 34). The Court entered its Order Granting the Trustee's Unopposed Motion to Realign the Parties (ECF No. 36) and issued a resultant *Sua Sponte* Order Regarding Pleading Deadlines setting forth new deadlines for the Trustee to file an Original Complaint and the BHT Trustee to serve an answer or dispositive motion (ECF No. 55).

On October 30, 2018, the Trustee filed his Original Complaint of Plaintiff, Jose Rodriguez, In His Capacity as Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr (ECF No. 61) (the "Trustee's Original Complaint"). As part of the Trustee's Original Complaint, the Trustee also added Le Ann Mary Cyr in her individual capacity ("Le Ann Cyr") as a defendant to this Adversary Proceeding. The Motions to Dismiss were filed, the Trustee filed his Responses thereto, and the BHT Trustee filed her Reply to the Trustee's Response.  The Trustee asserts eleven claims for relief, ten of which are the subject of the Motions to Dismiss.[1]

---

[1] Neither the BHT Trustee nor Le Ann Cyr moved for the dismissal of Count 11.

3

## I.  The Bergerud Heritage Trust[2]

On November 2, 2009, John and Carol Bergerud (the "Trustmakers") created the BHT and at the time of its formation, contributed $1,500.00 to the BHT. (ECF No. 77, Exh. A, § 1.04, Sched. A). The BHT is identified as an irrevocable trust. Exh. B, § 1.03 ("This Trust is irrevocable and neither of us can alter, amend, revoke, or terminate it in anyway."). Le Ann Cyr and Debtor are identified as Trustees of the BHT. Moreover, Debtor and Le Ann Cyr are designated as beneficiaries to the BHT. Exh. B, Art. 2. The specific objectives in creating the BHT include having:

> Any gift made to the trust be treated as a completed gift for federal estate and gift tax purposes;
>
> The assets of the trust estate, including life insurance proceeds, be excluded for federal estate tax purposes from our gross estates and the gross estates of our trust beneficiaries except to the extent we have explicitly granted a general power of appointment to a trust beneficiary; and
>
> The assets in this trust not be subject to the claims of any beneficiary's creditors.

Exh. A, at § 1.05; Exh. B, § 1.05. Additionally, the Trust Documents contain the following spendthrift provision:

> No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

Exh. A, at § 8.02; Exh. B, § 10.02. Finally, the Trustee alleges that on or about August 1, 2017,

---

[2] Copies of the Bergerud Heritage Trust dated November 2, 2009 (the "Original Trust Document) and the Restatement of the Bergerud Heritage Trust dated September 12, 2014 (the "Restated Trust Document) (collectively, the "Trust Documents") are provided at ECF No. 77.

Debtor was removed as a trustee of the BHT leaving Le Ann Cyr as the sole remaining trustee. (ECF No. 61, ¶ 17).

## DISCUSSION

### I.  Legal Standard

In the Fifth Circuit, when considering a motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502–03 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; see also *Twombly*, 550 U.S. at 570 (holding complaint must allege enough facts to move the claim "across the line from conceivable to plausible"). The determination of whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) ("Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."). Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

"On a motion to dismiss, the court may properly consider the documents attached to or incorporated by reference in the plaintiff's complaint, facts of which judicial notice may be taken,

and matters of public record." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir.2003) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996)). "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985).

## II.    Legal Analysis

### A.  Count 1: Declaratory Judgment

Under Count 1, the Trustee "seeks declaratory judgment . . . that the BHT is a self-settled trust or 'similar device' under [11] U.S.C. § 548(e)(1),[3] all assets of which are property of the Debtor's estate and subject to the claims of creditors." The BHT Trustee argues that Count 1 fails to state a cause of action because the Trustee is asking the Court to ignore the existence of the BHT by alleging facts that lead to the conclusion that the BHT is a sham or illusory trust and as a matter of Texas law, such allegations are inapplicable here. To support its proposition, the BHT Trustee cites to *Bradley v. Ingalls (In re Bradley)*, 501 F.3d 421, 429 (5th Cir. 2007) ("*In re Bradley*").

*In re Bradley* involved a determination of whether and to what extent Bradley, the debtor and beneficiary to a trust, self-settled that trust such that any or all the assets belonging to the trust should be declared property of Bradley's bankruptcy estate. (Bankr. Case No. 02-12741-FM, Adv. Proc. No. 02-01183; ECF No. 411 at 3). The bankruptcy court reviewed Texas law governing spendthrift trusts, and ultimately concluded that to the extent that (1) Bradley transferred property to the trust and (2) the chapter 7 trustee met his tracing burden with respect to such transfers, the assets would be deemed self-settled under Texas law and therefore, subject to the claims of

---

[3] All references to U.S.C. refer to 11. U.S.C. *et. seq.* unless otherwise specified herein.

6

creditors and part of Bradley's bankruptcy estate. *Id.* at 13–14 (citing Tex. Prop Code Ann. § 111.004(14) (West Supp. 2004)). On appeal, the chapter 7 trustee argued "that the bankruptcy and district courts erred because they stopped short of declaring that the [t]rust is a sham or illusory trust and that the trust property is *totally* included in the bankruptcy estate." ***In re Bradley***, 501 F.3d at 428 (emphasis added). The Fifth Circuit rejected this argument and concluded that in Texas, courts have not expanded the doctrine of illusory trusts beyond marital property situations; therefore, the bankruptcy court and district courts did not err in concluding that the trust *property in whole* was not property of the estate and that the trustee must satisfy a tracing burden with respect to each self-settled asset. ***Id.*** at 428–29.

The Court finds this case and ***Bradley*** distinguishable. Under Count 1, the Trustee seeks a determination that BHT is a self-settled trust or similar device under § 548(e)(1)—a claim for relief not addressed in ***Bradley***. Moreover, the issue in ***Bradley*** was not whether the trust assets were subject to avoidance under § 548(e)(1), but rather a determination of whether the trust was a valid, lawful and binding trust under state law. (Bankr. Case No. 02-12741-FM, Adv. Proc. No. 02-01183; ECF No. 411 at 3). Section 548(e)(1) does not condition avoidance on a trust being deemed invalid and unlawful under state law.

The BHT Trustee asserts that the Trustee is using Count 1 as a means of avoiding the tracing requirements articulated under ***Bradley.*** The Court will not speculate as to why the Trustee plead Count 1; however, the Court agrees that a determination that the BHT is a self-settled asset or similar device under § 548(e)(1) does not absolve the Trustee of any requirement to specifically identify the transfer of assets he seeks to avoid.

Here, the Trustee seeks a determination that all assets of the BHT are property of Debtor's estate and subject to claims of creditors on the basis that the BHT is a self-settled trust or similar

device. Section 548(e)(1) does not permit the avoidance of *all* transfers of assets to a self-settled trust or similar device on the sole basis that the trust at issue is a self-settled trust or similar device. Instead, the Trustee is required to specifically identify the assets transferred, as he did in Counts 2–11, and demonstrate that the elements of § 548(e)(1) are satisfied with respect to each asset. Therefore, while the Court does not agree that ***Bradley*** disposes of Count 1, the Court concludes that, as a matter of law, the Trustee is not entitled to the relief it seeks under Count 1. As such, the BHT Trustee's Motion to Dismiss is granted with respect to Count 1.

## B. Count 2: Transfer of Hillman Lawsuit Proceeds to the BHT

The Trustee alleges that beginning December 2016, Debtor filed a lawsuit (the "Hillman Lawsuit") that was ultimately resolved by written settlement agreement executed on or about March 23, 2017. Pursuant to the terms of the settlement agreement, Debtor was to be paid $1,000,000 on or before April 20, 2017, and another $600,000 in monthly installments on September 1, 2017 through November 1, 2018. The $600,000 was payable to the Debtor in three promissory notes in the amount of $200,000 each, which were to be executed by each of three defendants in the case. The Trustee alleges that the sums paid as a result of the Hillman Lawsuit were not paid to Debtor, but instead paid to the BHT at Debtor's direction.

The Trustee asserts four causes of action with respect to the payment of the Hillman Lawsuit proceeds to the BHT:

1. The payments were fraudulent transfers under 11 U.S.C. § 548(a)(1).
2. The payments were fraudulent transfers to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).
3. The Payments were fraudulent transfers under sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.
4. To the extent that payments were made on the promissory notes after January 20, 2018, they were prohibited post-petition transactions under 11 U.S.C. § 549(a).

1. **Fraudulent transfer under 11 U.S.C. § 548(a)(1)**

   a. **Parties Contentions**

   The BHT Trustee argues that the Trustee's causes of action under § 548(a)(1) fail to provide fair notice of the nature of the Trustee's allegations. Specifically, the BHT Trustee asserts that the cause of action does not indicate whether the Trustee is alleging that such transfer was done with actual intent to hinder, delay, or defraud under § 548(a)(1)(A) or whether such transfer was a constructively fraudulent transfer under § 548(a)(1)(B). Moreover, to the extent that the Trustee alleges such a transfer was done with actual intent to hinder, delay, or defraud, the BHT Trustee argues that the Trustee's Original Complaint fails to satisfy Federal Rule of Civil Procedure 9(b) because the Trustee does not allege facts establishing "how" and "why" the transfers were made with actual intent to hinder, delay, or defraud. Finally, to the extent the Trustee alleges such a transfer was a constructively fraudulent transfer under § 548(a)(1)(B), the BHT Trustee contends that the Trustee has failed to allege facts to support an allegation of insolvency as required under § 548(a)(1)(B)(ii).

   It is the Trustee's position that by alleging a cause of action under § 548(a)(1), the Trustee is providing fair notice that the Trustee is pursuing claims under both § 548(a)(1)(A) and (B). As to whether the Trustee has met the heightened pleading standard for his claim under § 548(a)(1)(A), the Trustee asserts that he has met such standard because the Trustee has plead with specificity at least three badges of fraud.  Finally, with respect to the pleading of insolvency for purposes of a constructive fraud claim, the Trustee asserts that he has plead insolvency by stating that the Cyrs contemplated bankruptcy for more than a year and had gone as far as preparing and signing a proposed, joint chapter 11 petition. By pleading such facts, the Trustee asserts an inference can be made that the Cyrs were insolvent. The Trustee requests, however, that to the

extent the Court disagrees with the Trustee, the Court order these claims to be replead rather than dismissed.

### b. Fair Notice

The Trustee's Original Complaint alleges transfers under 11 U.S.C. § 548(a)(1). Section 548(a)(1) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C.A. § 548(a)(1). The provision provides two bases by which the Trustee may avoid a qualifying transfer: actual fraud and constructive fraud. While each form of fraud shares common elements, the forms of fraud are distinguished by how fraud is proven. A transfer made with actual fraud involves a transfer made with actual intent to hinder, delay, or defraud. *Id.* at § 548(a)(1)(A). On the other hand, a constructively fraudulent transfer is a transfer (1) which the debtor received less than reasonably equivalent value in exchange for such transfer (2) made while the debtor

10

experienced a form of statutorily-enumerated financial condition. *Id.* at § 548(a)(1)(B). Here, the Trustee does not identify specific allegations under Count 2 (other than logistical facts of the transaction) which allows the Court to draw a reasonable inference that the Trustee is pursuing actual and constructive fraud claims. For example, in response to other arguments, the Trustee asserts it has properly plead insolvency for a constructively fraudulent transfer claim. To prevail on a constructively fraudulent transfer claim, the Trustee must prove insolvency on the date of the transfer. *Id.* at § 548(a)(1)(B)(ii)(I). The Trustee alleges no facts regarding Debtors insolvency on the date of each transfer. Moreover, the Trustee's Original Complaint is comprised of 11 Counts which each contain multiple causes of action. For purposes of clarity and transparency, the Court agrees with the BHT Trustee that the Trustee's Original Complaint should be plead with more specificity as to which cause(s) of action under § 548(a)(1) the Trustee intends to pursue.[4]

### c. Pleading Actual Fraud with Specificity

While the Fifth Circuit has not yet decided the issue of whether Federal Rule of Civil Procedure 9(b)'s heightened pleading standards apply to fraudulent transfers,[5] this Court has previously addressed pleading requirements under § 548(a)(1):

> "Section 548 covers two classes of [fraudulent] transactions: ones in which the debtor intended the transfer to harm or hinder creditors; and ones in which the unfairness stems from a disparity of exchange coupled with the debtor's lack of other assets." "If the fraudulent transfer statute the [plaintiff] want[s] the Court to apply requires intent to defraud, the enhanced pleading requirements of Rule 9(b) apply; if the statute allows for fraudulent transfer without intent to defraud, however, only the general pleading rules of Rule 8(a) must be satisfied." "Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such

---

[4] The Trustee pleads a causes of action under the Texas Uniform Fraudulent Transfer Act—specifically, sections 24.005 and .006. Both provisions provide multiple bases by which the Trustee may avoid a qualifying transfer. The Trustee, however, does not specify which bases he intends to pursue.

[5] ***Janvey v. Alguire***, 647 F.3d 585, 599 (5th Cir. 2011) (declining to address the issue of whether Rule 9(b)'s heightened pleading requirements are required for fraudulent transfer causes of actions).

> claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee." "Rather, § 548(a)(1)(B) claims must satisfy Rule 8(a) and contain a short and plain statement showing entitlement to relief. Under *Iqbal*, it follows that claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible."

*Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, Bankr. No. 09-11507, Adv. No. 11-01082, 2012 WL 195528 at * 7 (Bankr. W.D. Tex. Jan. 23, 2012) (citations omitted) (alterations in original). Here, the Trustee seeks to avoid certain transfers to the BHT as transfers made with actual fraud under § 548(a)(1)(A) and constructive fraud under § 548(a)(1)(B). Therefore, the Trustee's actual fraud claim is subject to the heightened pleading standard of Rule 9(b) and his constructive fraud claim is subject to the general pleading standards under Rule 8(a).

Rule 9(b), which is incorporated into Bankruptcy Rule 7009, provides that when "alleging fraud . . . , a party must state with particularity the circumstances constituting fraud or mistake. Bankr. R. Bankr. Proc. 7009(b). Moreover, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 7009(b) distinguishes between how a complaint should plead the circumstances of the alleged fraud[6] and the conditions of the defendant's mind at the time of the alleged fraud by requiring that the former be alleged with heightened particularity while relaxing the standard for the latter by allowing it to be plead generally. In the Fifth Circuit, Rule 9(b)'s heightened standard is satisfied by specifying the "who, what, when, where, and how"; however, "what constitutes sufficient 'particularity' under Rule 9(b) will necessarily differ with the facts of each case." *Think₃ Litig. Tr. v. Zuccarello (In re Think₃, Inc.)*, 529 B.R. 147, 198 (Bankr. W.D. Tex. 2015) (citing *Benchmark Elec. Inc. v. J.M.*

---

[6] Because mistake is not alleged, the Court's analysis will only focus on the portion of Rule 7009(b) which applies to fraud.

*Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). The Fifth Circuit has acknowledged that "'Rule 9(b)'s ultimate meaning is context-specific,' and thus there is no single construction of Rule 9(b) that applies in all contexts." *Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009). "Depending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id. See IAS Servs. Grp. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) ("[T]o state a claim for fraud, a plaintiff must plausibly plead facts establishing 'the time, place, and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" (citing to *Grubbs*, 565 F.3d at 186) (alteration in original)).

Here, § 548(a)(1)(A) requires a showing that a debtor transferred an interest of the debtor in property or incurred an obligation within two years before the filling of a petition with actual intent to hinder, delay, or defraud a present or future creditor. Therefore, a cause of action for actual fraud involves both a pleading of the circumstances surrounding the transfer and conditions of a debtor's mind. As to the circumstances founding the transfer, the Trustee must plead with specificity that Debtor transferred an interest of the debtor in property or incurred an obligation within two years before the filing of a petition—the who, what, and when. Under Rule 9(b), the conditions of Debtor's mind, however, are not subject to such heightened pleading standard and the Trustee need only plead actual intent to hinder, delay, or defraud a present or future creditor generally—with factual allegations that show that relief is plausible. *See Iqbal*, 556 U.S. at 677–78 ("It is true that Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.' But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity

requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.")

The BHT Trustee argues that the Trustee's Original Complaint fails to satisfy Rule 9(b) because the Trustee does not allege facts establishing the "how" and "why" the transfers were made with actual intent to hinder, delay, or defraud. The Court does not agree that this is the proper inquiry. First, as previously noted, the heightened standard for pleading the circumstances of alleged fraud is context-specific and depends on the elements of the claim at hand. At the at the most, the Trustee need only allege the who, what, when, where and how the alleged fraud was perpetrated; facts alleging *why* the alleged fraud was perpetrated is not required.

Second, to the extent that the Trustee must allege the "how" element, the Court does not agree that the Trustee must allege how the transfer was made with actual intent to hinder, delay, and defraud. As previously explained, Rule 7009(b) distinguishes between pleading the circumstances of the alleged fraud and the conditions of the defendant's mind at the time of the alleged fraud. Thus, the heightened standard requiring the specifics of the "who, what, when, where, and how" of the alleged fraud applies to the circumstances surrounding the fraud, not the conditions of the defendant's mind at the time of the alleged fraud. Therefore, to the extent that the Trustee needs to plead the how element, the Trustee need only plead the logistics of the transfer—for example, how the transfer was executed or the means by which the transfer occurred—not how the transfer was made with actual intent to hinder, delay, or defraud.[7]

---

[7] The BHT Trustee states that "other than specifying the dates, property and parties involved, [the Trustee's Original Complaint] fails to allege facts establishing how or why these transfers were purportedly made with actual intent to hinder, delay[,] or defraud. (ECF No. 72, ¶ 6.4). The Court understands this statement to mean that the BHT Trustee is on fair notice of the who, what, and when of the alleged fraud. As such, the Court will not further address the merits of whether the transfers have been adequately pled as to these elements.

While the Court does not agree that the BHT Trustee's inquiry is the correct inquiry, the Court finds it necessary to interpret her argument broadly and therefore will address it accordingly. Under a broad interpretation of the BHT Trustee's argument, the BHT Trustee alleges that the Trustee did not plead how the transfer occurred. As previously discussed, the heightened standard for pleading the circumstances of alleged fraud is context-specific and depends on the elements of the claim at hand. ***Buckley***, 900 F.3d at 647 (explaining that "Rule 9(b)'s particularity requirements are tied to the elements of fraud" (citing ***Grubbs***, 565 F.3d at 188–89)). To state a claim under § 548(a)(1)(A) and recover the property transferred under § 550(a),[8] the Trustee must plausibly plead facts establishing the time and contents of the transfer and the identities of the individuals involved in the transfer. The plain language of § 548(a)(1)(A) does not require that the Trustee demonstrate how the transfer occurred.

As to whether the Trustee properly pled facts alleging actual intent to hinder, delay, or defraud present or future creditors, the Trustee asserts it has done so by asserting facts supporting three badges of fraud. As previously discussed, Rule 9(b) permits "malice, intent, knowledge, and other conditions of a person mind [t]o be alleged generally." Therefore, to properly plead the actual intent to hinder, delay, or defraud element of § 548(a)(1)(A), the Trustee must plead such intent with factual allegations that show that relief is plausible. *See Iqbal*, 556 U.S. at 677–78 (explaining that conditions of a person's mind under Rule 9(b) be plead according to Rule 8 standards.).

The Fifth Circuit has recognized that reliance on badges of fraud is permissible for establishing fraudulent intent:

> [T]he Bankruptcy Code also unwinds transfers made "with actual intent to hinder, delay or defraud" creditors, 11 U.S.C. § 548(a)(1),

---

[8] "[T]o the extent that a transfer is avoided under section . . . 548 . . .of this title, the trustee may recover . . . from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made; or . . . any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

and may deny discharge on similar grounds. 11 U.S.C. § 727(a)(2). In this connection, courts have identified various "badges of fraud" that tend to evidence a transfer made with intent to defraud under § 548 and § 727:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

*In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (citations omitted).[9] It is not necessary that all or any one of the badges of fraud be established to support a finding of actual fraudulent intent by the debtor; however, more than one badge of fraud must be shown to establish actual fraudulent intent.

*In re Think₃, Inc.*, 529 B.R. at 198. Moreover, courts—including this Court—have required the "confluence" of multiple badges of fraud to establish actual fraudulent intent. *Cf. Osherow v. Tex. Silica Logistics Joint Venture, LLC (In re FWLL, INC.)* Case No. 15-52071, Adv. No. 16-05023, 2018 WL 1684308 at *17 (Bankr. W.D. Tex. Apr. 5, 2018) ("Courts typically require a

---

[9] It should be noted that *In re Soza* did not involve a fraudulent transfer claim under § 548(a)(1)(A). 542 F.3d 1060, 1065 (5th Cir. 2008). Rather, *In re Soza* involved an objection to a Texas state-law exemption under Tex. Ins. Code Ann. § 1108.051 and whether an annuity purchased by a debtor was exempt or non-exempt because it was a "premium payment made in fraud of a creditor . . . ." under section 1108.053 under the Texas Insurance Code. *Id.* at 1063 (citation omitted). Section 1108.051 of the Texas Insurance Code provides exemptions for certain insurance and annuity benefits. Such exemptions, however, are unavailable where "a premium payment was made in fraud of a creditor[.]" *Id.* at § 1108.053(a). The Fifth Circuit held that the phrase "fraud of a creditor" encompassed intentional fraud as well as conduct constituting less than intentional fraud. *Id.* at 1065. In evaluating "what conduct less than intentional fraud amounts to fraud on creditors" under section 1108.053, the Fifth Circuit discussed various standards used to prove actual fraud and constructive fraud, and in dicta, recognized that other courts have used "badges of fraud" to evidence a transfer made with intent to defraud under §§ 548 and 727 under the Bankruptcy Code. *In re Soza*, 542 F.3d at 1067 (citations omitted). Thus, while the Fifth Circuit has not directly addressed whether badges of fraud indicate evidence of actual intent under § 548(a)(A)(1), the Court is comfortable relying on *In re Soza* to support this proposition. *See e.g.*, *O'Cheskey v. Citigroup Glob. Mkts., Inc. (In re Am. Hous. Foun.)*, 543 B.R. 245, 266 (N.D. Tex. 2015) (analyzing the badges of fraud identified in *In re Soza* to determine whether a Complaint properly pleads facts indicating actual fraud); *In re Think₃, Inc.*, 529 B.R. at 198 (citing *In re Soza*, 542 F.3d at 1067) (applying the badges of fraud identified in *In re Soza* to determine whether a plaintiff has pled actual fraud under § 548(a)(1)(A) with sufficient particularity to satisfy the Rule 9(b) standard).

'confluence' of multiple badges of fraud to establish actual intent [under TUFTA], but it is not necessary that all or any one of the badges of fraud be established to support a finding of actual fraudulent intent by the debtor." (citations omitted)); *see also **In re Think₃, Inc.***, 529 B.R. at 198 (citations omitted). Because badges of fraud are used to establish actual intent to hinder, delay, or defraud—the condition of the debtor's mind at the time of the transfer—factual allegations regarding badges of fraud need only comply with Rule 8 and plead factual allegations that demonstrate that relief is plausible.[10]

The Trustee asserts that it has alleged facts asserting three badges of fraud: (1) the family, friendship or close associate relationship between the parties; (2) the retention of possession, benefit or use of the property in question by the Cyrs; and (3) transactions whereby assets were placed in the BHT during a period when the Cyrs were contemplating bankruptcy. The Court disagrees.

As to the relationship between Debtor and the BHT, the Trustee alleges the following: When the Trust was originally created, Debtor and Le Ann Cyr were listed as Trustees and Debtor,

---

[10] Lower courts have not consistently analyzed how actual fraudulent transfer claims and badges of fraud must be pled to satisfy Rule 9(b). For example, one court held that where a plaintiff alleged the "who, what, when, where, and how" of at least five badges of fraud, the plaintiff had satisfied Rule 9(b). ***In re Think₃, Inc.***, 529 B.R. at 198 (finding that the factual allegations sufficiently set forth the "who, what, when, where, and how" of at least five badges of fraud). Another court, however, held that pleading facts alleging two badges of fraud to establish "how the transfers were made with the intent to defraud." ***In re Am. Hous. Foun.***, 543 B.R. 245, 266 (Bankr. N.D. Tex. 2015) ("The Second Amended Complaint clearly sets forth the who . . . what . . . and when . . . of the transfers. . . . The badges arguably inform how the transfers were made with intent to defraud."). Another court treated the "who, what, when, where, and how" pleading requirements as an alternative to pleading actual fraudulent intent. ***Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)***, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013) ("Here, the court finds that the acts alleged by TRBP in the Avoidance Complaint unquestionably provide notice to both Paradigm and HSG of the specific facts and circumstances surrounding this eve of bankruptcy transaction, including the who, what, when, and where of the alleged fraud. However, even if the Avoidance Claim did not properly allege such facts, TRBP has, nonetheless, pleaded the fraudulent intent required under section 548(a)(1)(A) of the Bankruptcy Code by pleading certain indicia of fraud."). For the reasons stated above, this Court concludes that the Trustee is required to comply with Rule 9(b)'s heightened pleading standard only as it applies the circumstances surrounding the alleged fraud, and not the actual intent to hinder, delay or defraud creditors.

Le Ann Cyr, and their children were identified as beneficiaries. (ECF No. 61, ¶ 9). The Trustee also alleges that the Debtor and Le Ann Cyr have utilized the BHT to hold ownership interests in businesses and profit-making endeavors and made themselves employees of entities owned by the BHT. (*Id.* at ¶ 11). Moreover, the Trustee asserts that the Debtor and Le Ann Cyr have utilized the BHT to assemble and hold considerable assets and generate considerable income. (*Id.* at ¶ 12). The Trustee also alleges that Debtor and Le Ann Cyr, both individually and as Trustees of the BHT have enjoyed unfettered access to the assets and income of the BHT, and routinely disregard the terms and restrictions of the BHT, whenever it suits them to do so. (*Id.* at ¶ 13). Finally, the Trustee alleges that on or about August 1, 2017, the BHT Advisor, Mr. Norbert Gonzales, Jr., removed Debtor as Trustee of the BHT. (*Id.* at ¶ 17).

With respect to "the retention of possession, benefit or use of the property in question by the Cyrs," the Trustee alleges that Debtor and Le Ann Cyr have utilized the BHT to hold ownership interests in businesses and profit-making endeavors and made themselves employees of entities owned by the BHT (*Id.* at ¶ 11) and that both have enjoyed unfettered access to the assets and income of the BHT, and routinely disregard the terms and restrictions of the BHT, whenever it suits them to do so. (*Id.* at ¶ 13). The Court can reasonably infer that such alleged unfettered access to the BHT results in Debtor benefiting and using assets transferred to the BHT.

The Trustee also argues that it asserted factual allegations demonstrating that transfers to the BHT were made during a time when the Cyrs were contemplating bankruptcy. The Trustee alleges that the Cyrs contemplated bankruptcy for more than a year prior to filing chapter 7 bankruptcy on January 20, 2017. (*Id.* at ¶ 16). The Trustee also asserts that as of January 7, 2017, Debtor and Le Ann Cyr had gone as far as preparing and signing a proposed, joint chapter 11 petition. (*Id.*) The Trustee does not specify which badge of fraud is manifested by such factual

allegations and it is not clear to the Court which badge of fraud these facts are intended to support. At least two badges of fraud deal with the financial condition of the Debtor at the time of the transfer; however, the Court is not convinced that the Trustee has properly plead facts demonstrating either badge of fraud. For example, one badge of fraud involves the financial condition of the party sought to be charged both before and after the transaction in question. The Trustee has not asserted any facts alleging the financial condition of Debtor before each transfer. The Court is not convinced that contemplating bankruptcy and/or filing bankruptcy is sufficient to demonstrate the status of Debtor's financial condition. As acknowledged below, individuals seek protections provided by the Bankruptcy Code for a myriad of reasons, not solely because they are experiencing financial ruin. The second badge of fraud dealing with a debtor's financial condition involves the existence or cumulative effect of the pattern or series of transactions or course of conduct after the onset of financial difficulties. Again, the Court is not convinced that contemplating and/or filing bankruptcy is sufficient to demonstrate that Debtor was experiencing financial difficulties.

As previously noted, while it is not necessary that all or any one of the badges of fraud be established to support a finding of actual fraudulent intent by the debtor, more than one badge of fraud must be shown to establish actual fraudulent intent. *In re Think3, Inc.*, 529 B.R. at 198. At most, the Trustee has properly plead two of six badges of fraud: the family, friendship or close associate relationship between Debtor and the BHT and the retention of possession, benefit or use of the property in question by the Cyrs. To establish actual fraudulent intent under § 548(a)(1)(A), such intent must include intent to hinder, delay, or defraud present or future creditors. The Trustee does not allege any facts indicating that creditors were pursuing claims against Debtor at the time of or after the transfers were made. Without the allegations that such creditors existed, there can

19

be intent to hinder, delay, or defraud present or future creditors.[11] As such, the Court finds that the

Trustee has not properly plead an intent to defraud for purposes of an actual fraudulent transfer

claim.

### d. Insolvency under Constructive Fraud

As previously noted, a constructively fraudulent transfer involves: (1) a transfer by a debtor

for which a debtor received less than reasonably equivalent value in exchange for such transfer;

(2) while the debtor experienced a form of statutorily-enumerated financial condition. *Id.* at

§ 548(a)(1)(B). Section 548(a)(1)(B)(ii) provides an exhaustive list of what constitutes such

financial vulnerability for purposes of a constructively fraudulent transfer:

1. [Debtor] was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
2. [Debtor] was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
3. [Debtor] intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
4. [Debtor] made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

The Trustee asserts that he has properly pled facts alleging insolvency because the Trustee asserted

that by the time Debtor filed bankruptcy on January 20, 2018, the Cyrs had contemplated

bankruptcy for more than a year and had gone as far as preparing and signing a proposed, joint

---

[11] The Court recognizes its ability to take judicial notice of the record before it and acknowledges that it can consider the claims register and proofs of claims filed in Debtor's case. *Flintkote*, 760 F.2d at 587 ("A court may take judicial notice of related proceedings and records in cases before the same court."). The Court, however, will not do so in this instance.

chapter 11 petition. Moreover, the Trustee asserts that this would indicate that the Cyrs believed they were insolvent, from which an inference of insolvency can be drawn. The Court disagrees.

As Counsel for the Trustee conceded at the oral hearing, individuals file bankruptcy for reasons other than being insolvent. Therefore, the fact that the Cyrs contemplated bankruptcy prior to filing bankruptcy on January 20, 2018 does not necessary mean the Cyrs were insolvent. Moreover, "insolvent" is a defined term under the Code. Section 101(32)(A) describes an individual as insolvent when the sum of the individual's debts is greater than the individual's assets. The Code's definition of insolvency excludes both (1) "property transferred, concealed, or removed with intent to hinder, delay or defraud such [individual's] creditors;" and (2) the debtor's exempt property. 11 U.S.C. § 101(32)(A). The Trustee presented no allegations regarding the value of the Cyr's debt relative to the value of the Cyr's assets at the time the transfers were made. As such, the Court agrees with the BHT Trustee in that the Trustee has failed to properly plead insolvency for purposes of a constructively fraudulent transfer claim.

### 2. Fraudulent transfer under 11 U.S.C. § 548(e)(1)

### a. Parties Contentions

The BHT Trustee argues that the Texas Trust Code (the "Trust Code") provides a complete bar to the Trustee's claims under § 548(e) as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Trust Code the Trustee may not avoid such transfers under 11. U.S.C. § 548(e). The Trustee asserts that contrary to the BHT Trustee's assertions, the provisions of the BHT do not satisfy the requirements of the Texas Trust Code provision which the BHT Trustee relies upon and therefore the BHT and conveyances made thereto are subject to the Trustee's avoidance powers under § 548(e)(1). The Statutory Framework

### i.  Texas Trust Code

The Trust Code permits and enforces spendthrift trusts. The Trust Code provides that a settlor "may provide in the terms of the trust that the interest of a beneficiary in the income or in the principal in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee." Tex. Prop. Code Ann. § 112.035(a). Moreover, "[a] declaration in a trust instrument that the interest of a beneficiary shall be held subject to a 'spendthrift trust' is sufficient to restrain voluntary or involuntary alienation of the interest by a beneficiary to the maximum extent permitted by this subtitle" and a trust containing such terms may be referred to as a "spendthrift trust." *Id.* at § 112.035(b)–(c). Where a settlor is also a beneficiary of the trust, however, a spendthrift trust provision "does not prevent the settlor's creditors from satisfying claims from the settlor's interest in the trust estate." *Id.* at § 112.035(d). The Trust Code defines "settlor" as "a person who creates a trust or contributes property to a trustee of a trust. If more than one person contributes property to a trustee of a trust, each person is a settlor of the portion of the property in the trust attributable to that person's contribution to the trust. The terms 'grantor' and 'trustor' mean the same as 'settlor.'" *Id.* at § 111.004(14). "Beneficiary" "means a person for whose benefit property is held in trust, regardless of the nature of the interest." *Id.* at 111.004(2). Therefore, while spendthrift trusts are enforceable under Texas law, to the extent a beneficiary also contributes property to such trust, the assets contributed by the beneficiary-settlor are deemed "self-settled" and subject to the claims of creditors. ***Shurley v. Tex. Comm. Bank—Austin, N.A. (In re Shurley)***, 115 F.3d 333, 338 (5th Cir. 1997) ("We have recognized that a beneficiary's interest in a spendthrift trust is not subject to claims of creditors under Texas law '[u]nless the settlor creates the trust and makes himself beneficiary.' The rationale for this 'self-settlor' rule is obvious enough: a debtor should not be able to escape claims of his

creditors by himself setting up a spendthrift trust and naming himself as beneficiary. Such a maneuver allows the debtor, in the words of appellees, to 'have his cake and eat it too.'"(citation omitted))

Section 112.035(g) of the Trust Code, however, provides an exception to the Trust Code's definition of a settlor where a settlor-beneficiary contributes assets to certain types of trusts:

> (g) For the purposes of this section, property contributed to the following trusts is not considered to have been contributed by the settlor, and a person who would otherwise be treated as a settlor or a deemed settlor of the following trusts may not be treated as a settlor:
>
> * * *
>
> (2) an irrevocable inter vivos trust for the settlor's spouse if the settlor is a beneficiary of the trust after the death of the settlor's spouse; or
> (3) an irrevocable trust for the benefit of a person:
> (A) if the settlor is the person's spouse, regardless of whether or when the person was the settlor of an irrevocable trust for the benefit of that spouse; or
> (B) to the extent that the property of the trust was subject to a general power of appointment in another person.

*Id.* at § 112.035(g). The BHT Trustee argues that because the BHT is an irrevocable trust, and Debtor is a named beneficiary of the BHT, the plain language of the Trust Code prohibits deeming any property contributed to the BHT to have been contributed by Debtor. The BHT Trustee does not specify which subsection of section 112.035(g) applies to the BHT.

## ii.    11 U.S.C. § 548(e)(1)

Section 548(e)(1) authorizes a trustee to

> avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition if–
> (A)    such transfer was made to a self-settled trust or similar device;
> (B)    such transfer was by the debtor;

> (C)    the debtor is a beneficiary of such trust or similar
> device; and
> (D)    the debtor made such transfer with actual intent to
> hinder, delay, or defraud any entity to which the debtor was
> or became, on or after the date that such transfer was made.

11 U.S.C.A. § 548(e)(1). The Bankruptcy Code does not define "self-settled trust" or "similar device" and there is little case law addressing the precise definition of such terms.  Some courts have looked to state-law to define whether a trust is a self-settled trust under § 548(e)(1). *Quality Meat Products, LLC v. Porco, Inc. (In re Porco, Inc.)*, 447 B.R. 590, 595–96 (Bankr. S.D. Ill. 2011) (analyzing Illinois law to determine whether a trust was a "self-settled trust"); *Battley v. Mortensen (In re Mortensen)*, Bankr. No. A09-00565, Adv. No. A09-90036, 2011 WL 5025249 at *6 (Bankr. D. Ak May 26, 2011) (determining the trust at issue was a self-settled trust under Alaska-state law). Other courts, however, have looked to a generally-accepted definition of "self-settled trust" to determine whether a trust was self-settled. *Smith v. Pollack (In re Pollack)*, Bankr. No. 13-11508, Adv. No. 15-1037, 2016 WL 270012 at *5 (Bankr. D. N.H. Jan. 20, 2016) ("A self-settled trust has been defined as '[a] trust in which the settlor is also the person who is to receive the benefits from the trust, usually set up in an attempt to protect the trust assets creditors.'" (alteration in original) (internal quotations omitted) (citation omitted)); *Gordon v. Harman (In re Harman)*, 512 B.R. 321, 343 (Bankr. N.D. Ga. 2014) (quoting the same). Additionally, the Parties have not identified, and this Court has not found any authority that creates a bright-line test for determining whether a trust qualifies as a similar device under § 548(e)(1). One court, however, discusses the term's function:

> [T]he statutory language [§ 548(e)(1)] does not strictly limit the
> reach of this provision to self-settled trusts only, but also extends it
> to "similar device[s]." This rather clearly suggests that Section
> 548(e)(1) is intended to broadly address any perceived abuse
> whereby a debtor seeks to put his assets out of reach of creditors by
> transferring them to a trust which he himself has had a hand in

creating, and of which he is a beneficiary, regardless of whether it fits within the precise definition of a self-settled trust.

*Roeder v. Priscilla Avers Family Tr. (In re Avers),* Case No. 13-10765, Adv. No. 14-1051, 2015 Bankr. LEXIS 1623, at *6 (Bankr. W.D. Pa. May 13, 2015).

**b. Legal Analysis**

The Trustee seeks to avoid transfers to the BHT under § 548(e). To prevail on such claim, the Trustee must properly plead four elements: (1) a transfer to a self-settled trust or similar device made on or within 10 years before the date of the filing of the petition; (2) a transfer by the debtor; (3) debtor is a beneficiary; and (4) debtor made the transfer with the actual intent to hinder, delay or defraud creditors. The BHT Trustee asserts that the Trustee's claim's under § 548(e)(1) are barred as a matter of law because the assets transferred by Debtor are not self-settled assets under Texas law and therefore not subject to the claims of creditors. The Court disagrees.

First, the plain language of § 548(e)(1) does not look to whether assets transferred to a self-settled trust or similar device are self-settled under state law. Section 548(e)(1) is completely devoid of any reference to non-bankruptcy law. Therefore, the requirements contained in the statute itself, not state law, determine whether the transfer of a particular asset is subject to a trustee's avoidance power under § 548(e)(1).

Second, even if this Court were to define the term "self-settled trust" according to state law and the assets transferred by Debtor to the BHT are not self-settled under the Trust Code, the plain language of § 548(e)(1) permits avoidance of transfers made to self-settled trusts *or similar devices*. The Court agrees with the *Avers* court that § 548(e)(1) contemplates a broad application and applies to trusts or devices intended to shield assets from creditors, such as spendthrift trusts, where the debtor-beneficiary transfers assets to such device with an actual intent to hinder, delay, or defraud present or future creditors.

Finally, in this Court's opinion, § 548(e)(1) respects the rights of states who choose to shield self-settled assets from creditors and those states which do not. At common law, self-settled trusts were unlawful as a matter of public policy, and as the Fifth Circuit recognized in *Shurley*, Texas has adopted such public policy:

> Public policy does not countenance devices by which one frees his own property from liability for his debts or restricts his power of alienation of it; and it is accordingly universally recognized that one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation. The rule applies in respect of both present and future creditors and irrespective of any fraudulent intent in the settlement or purchase of a trust.

*In re Shurley*, 115 F.3d at 338 (citing *Glass v. Carpenter*, 330 S.W.2d 530, 533 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.)).[12] Some states, however, have statutorily validated self-settled trusts such that creditors cannot look to self-settled assets to satisfy their claims. For example, in Alaska, self-settled assets are generally protected from claims of creditors except in limited circumstances, including clear and convincing evidence that the settlor's transfer was made with intent to defraud a creditor. ALASKA STAT. ANN. § 34.40.110(b)(1) (West 2018). Nevada and Delaware have similar protections for spendthrift trusts. *E.g.,* NEV. REV. STAT. ANN. § 166.170 (West 2018); Del. Code Ann. tit.12, § 3536 (West 2018). To prevail under § 548(e)(1), a trustee must also prove an actual intent to hinder, delay, or defraud present and future creditors. Absent such intent, whether a creditor can reach self-settled assets to satisfy their claims is determined by state law, and not the Bankruptcy Code.

---

[12] The Court recognizes that section 112.035(g) of the Trust Code was adopted after *Shurley*. Because section 112.035(g) is not a blanket safe harbor for self-settled assets, but rather a possible limited exception to secion 112.035(d), the Court cannot conclude that Texas's general policies regarding self-settled assets has deviated since the *Shurley* opinion.

The Court notes that a majority of the Parties' briefing was spent analyzing whether assets contributed by Debtor to the BHT were self-settled assets under Texas law. Because the finds that the Trust Code is not relevant for purposes of determining whether an asset is subject to the Trustee's avoidance powers under § 548(e)(1), the Court need not decide the issue.

### 3. Fraudulent transfer under Tex. Bus. & Com. Code sections 24.005 and 24.006[13]

#### a. Parties Contentions

The BHT Trustee argues that the Trustee's claim to avoid transfers under sections 24.005 and 24.006 of the Texas Business & Commerce Code is barred as a matter of law because the assets transferred to the BHT by Debtor are not self-settled assets under Texas law and therefore not subject to the claims of creditors. The Court disagrees.

#### b. Texas Business & Commerce Code §§ 24.005 and 24.006

Chapter 24 of the Texas Business & Commerce Code sets forth the Texas Uniform Fraudulent Transfer laws ("TUFTA"). Sections 24.005 and .006 identify which transfers constitute fraudulent transfers as to present and future creditors.

Texas Business & Commerce Code section 24.005 provides a bases for avoiding transfers that are fraudulent as to present and future creditors:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

[13] The Trustee pleads a cause of action under sections 24.005 and 24.006 of the Texas Business & Commerce Code. While the Trustee does not expressly cite its authority to do so, the Court recognizes such authority under 11 U.S.C. § 544. Section 544(a) empowers a trustee to avoid certain prebankruptcy transfers that could have been avoided by certain types of creditors regardless of whether or not such creditor exists. 11 U.S.C. § 544(a). Section 544(b), however, provides a trustee with the powers of an actual creditor with an allowable unsecured claim that could have avoided a transfer of the debtor's property or any obligation of the debtor under non-bankruptcy law. *Id.* at § 544(b). To the extent that the Trustee seeks to stand in the shoes of an unsecured creditor under § 544(b), the Court notes that unsecured claims have been filed in the case.

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

> (1) the transfer or obligation was to an insider;

> (2) the debtor retained possession or control of the property transferred after the transfer;

> (3) the transfer or obligation was concealed;

> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

> (5) the transfer was of substantially all the debtor's assets;

> (6) the debtor absconded;

> (7) the debtor removed or concealed assets;

> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code Ann. § 24.005 (West 2019).

Texas Business & Commerce Code section 24.006 provides a basis for avoiding transfers that are fraudulent as to present creditors:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made

28

the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

*Id.* at § 24.006.

### c. Legal Analysis

Under TUFTA, a "transfer" "means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an *asset or an interest in an asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Bus. & Com. Code § 24.002(12). "Asset" is defined as "property of a debtor, but the term does not include: (A) property to the extent it is encumbered by a valid lien; (B) property to the extent it is generally exempt under nonbankruptcy law; or (C) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant, under the law of another jurisdiction." *Id.* at § 24.002(2). While not expressly articulated by the BHT Trustee as so, the Court interprets her argument as a dispute as to whether there was a transfer of an asset for purposes of TUFTA.

TUFTA's definition of a "transfer" involves transfers of property of a debtor subject to three exclusions. The BHT Trustee does not contend that the assets at issue fall under any of the three categories of excluded assets. Instead, the BHT Trustee contends that because the plain language of section 112.035(g) prohibits the Court from deeming any property contributed by Debtor to the BHT as property contributed by a settlor, such property is not subject to avoidance. The Court disagrees. TUFTA distinctly identifies three categories of property which are not subject to avoidance for purposes of TUFTA; whether or not property is self-settled or not self-settled for

29

purposes of the Trust Code's spendthrift provisions is not an enumerated basis for exclusion under TUFTA.

### C. Count 3: Transfer of Dominion Real Property (8 Villers St. Paul) to the BHT

The Trustee alleges that on or about October 26, 2009, Debtor and Le Ann Cyr acquired certain real property located behind their home (the "Villers St. Paul Property") and on or about October 5, 2012, Debtor and his spouse executed a warranty deed transferring such property to themselves as Trustees of the BHT. The Trustee asserts three causes of action with respect to the transfer of the Villers St. Paul Property to the BHT:

1. The transfer was a fraudulent transfer under 11 U.S.C. § 548(a)(1).
2. The transfer was a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).
3. The transfer was a fraudulent transfer sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.

### 1. Fraudulent transfer under 11 U.S.C. § 548(a)(1)

The BHT Trustee argues that to the extent the Trustee seeks to avoid the transfer of the Villers St. Paul Property under § 548(a), such cause of action is time-barred as § 548(a)(1)(A) does not authorize a trustee to avoid a transfer made more than two year prior to the petition date. The Trustee concedes that the BHT is correct in this regard and agrees that Count 3 should be dismissed only as to the claim under § 548(a)(1). As such, Count 3 is dismissed as to the claim under § 548(a)(1).

### D. Count 4: Transfer of Horseshoe Bay Lake House to the BHT

The Trustee alleges that in approximately July 2013, Debtor and Le Ann Cyr entered into an agreement to acquire a substantial lake house at Horseshoe Bay, Texas (the "Lake House"), and subsequently transferred the right to acquire the Lake House to the BHT in a transaction that closed on or about September 12, 2013. The Trustee also alleges that contemporaneously with the closing, Debtor and his spouse executed a Note in the amount of $1,680,000 to Broadway National

Bank and a deed of trust granting Broadway Bank National Bank a lien on the Lake House. Finally, the Trustee contends that Debtor and his spouse caused the BHT to sign the deed of trust as "Borrower" since title was held in the BHT's name. The Trustee asserts three causes of action with respect to the Lake House:

1. The transfer of the Lake House to the BHT was a fraudulent transfer under 11 U.S.C. § 548(a)(1).
2. The transfer was a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).
3. The transfer was a fraudulent transfer sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.

### 1. Fraudulent transfer under 11 U.S.C. § 548(a)(1)

The BHT Trustee argues that to the extent the Trustee seeks to avoid the transfer of the Lake House under § 548(a), such cause of action is time-barred as § 548(a)(1)(A) does not authorize a trustee to avoid a transfer made more than two year prior to the petition date. The Trustee concedes that the BHT is correct in this regard and agrees that Count 4 should be dismissed only as to the claim under § 548(a)(1).

### 2. Fraudulent transfer under § 548(e)(1)

### a. Barred by Trust Code

The BHT Trustee argues that the Texas Trust Code provides a complete bar to the Trustee's claims under § 548(e) as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Texas Trust Code the Trustee may not avoid such transfers under 11. USC. § 548(e). For the reasons stated under Count 2, the Court disagrees.

### b. Transfer of An Interest of Debtor

### i. Parties Contentions

The BHT Trustee asserts that the § 548(e)[14] violation under Count 4 alleged by the Trustee has not been adequately plead because the Trustee does not properly allege a transfer of an interest of a debtor as required under § 548(e). In summary form, the BHT Trustee argues that the interest of Debtor that the Trustee seeks to avoid is not clear—while the Trustee seeks to avoid the transfer of the Lake House to the BHT, the Trustee does not specifically allege how the Lake House was an interest of Debtor in property transferred by Debtor. The Trustee contends that the transfer of the Lake House was an indirect transfer by Debtor and therefore properly plead for purposes of § 548.

### ii. Legal Analysis

The Bankruptcy Code defines "transfer" to mean:

(A) The creation of a lien;
(B) The retention of title as a security interest;
(C) The foreclosure of a debtor's equity of redemption; or
(D) Each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
    a. Property; or
    b. An interest in property.

11 U.S.C. § 101(54). "Congress intended the term 'transfer' to be construed as broadly as possible." ***Besing v. Hawthorne (In re Besing)***, 981 F.2d 1488, 1492 (5th Cir. 1993). A transfer need not be made directly by a debtor to fall within the scope of the Code's definition of "transfer." *See **Kellog v. Blue Quail Energy (In re Compton, Corp.)***, 831 F.2d 586, 591 (5th Cir 1987)

---

[14] The BHT Trustee also alleges such deficiency with respect to the Trustee's cause of action under § 548(a). Because the Court dismissed the Trustee's § 548(a) cause of action under Count 4, the Court will not address the merits of this argument as it applies to § 548(a). The Court notes, however, that the result is the same under both claims for relief because both provisions require that the transfer to be avoided be a transfer of an interest of the debtor.

(discussing the "indirect transfer doctrine" for purposes of determining whether a transfer was an indirect preferential transfer under § 547).[15] To identify the indirect transfer, courts first identify the direct transfer and its respective parties—the third party-transferor, the debtor-transferor, and the transferee. *Carmel v. River Bank Am. (In re FBN Food Servs.)*, 175 B.R. 671, 683 (Bankr. N.D. Ill 1994). The third-party transferor is the party conveying the property in the direct transfer, the debtor-transferor is the debtor causing the direct transfer, and the transferee is the recipient of the property at issue. *Id*. From there, it must be determined (1) how the debtor-transferor indirectly caused the direct transfer and (2) whether an interest of the debtor was transferred. *Id*. In determining whether an interest of the debtor was transferred, the Bankruptcy Code does not define "interest of the debtor"; however, the Supreme Court has compared the phrase to the language of § 541(a)(1) which provides that an estate is comprised of "all legal or equitable interests of the debtor" and concluded that the scope of the phrase is limited only to that property that would have been property of the estate but for the transfer. *Cf. Begier v. IRS*, 496 U.S. 53, 59 n.3 (1990) (holding that property subject to a preferential transfer, "is best understood as property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings" (citing 11 U.S.C. § 541(a)(1)).

The Trustee has not properly alleged a transfer of an interest of the debtor. First, the Trustee does not identify the direct transfer. Specifically, the Trustee does not identify the third party who conveyed the Lake House to the BHT. The Trustee only alleges that Debtor and Le Ann

---

[15] The Court recognizes that *In re Compton* involved a preference claim and its analysis centered on combating circuity that resulted in preference given to similarly situated creditors. This distinction immaterial. Both §§ 547 and 548 equally apply the Code's definition of "transfer." Moreover, both provisions also involve transfers of any "interest of the debtor" that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer. *Begier v. IRS*, 496 U.S. 53, at 59 n.3 (1990); *see also Hargis v. U.S. Trustee (In re Hargis),* 887 F.2d 77, 79 (5th Cir.1989) (recognizing that the trustee's avoidance powers under chapter 5 of the Code are "exclusively geared towards protecting the rights of creditors via protection of the bankruptcy estate"). Therefore, the Court will rely on *Compton* for purposes of determining whether an indirect transfer has been properly plead.

Cyr entered into an agreement to acquire the Lake House. Moreover, the Trustee does not identify or describe the agreement which allegedly effectuated the direct transfer. Second, the Trustee does not allege facts demonstrating that Debtor ever had an interest in the property the Trustee seeks to avoid—the Lake House. The Trustee argues that but for the transfer of the Cyrs' rights to acquire the Lake House to the BHT, the Lake House would have otherwise belonged to the Cyrs'. While that may be true, the Trustee does not explain how this right to acquire translates to a legal or equitable interest in the Lake House that belonged to Debtor.

### 3. Fraudulent transfer under Tex. Bus. & Com. Code sections 24.005 and 24.006

The BHT Trustee argues that the Texas Trust Code provides a complete bar to the Trustee's claims under TUFTA as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Texas Trust Code the Trustee may not avoid such transfers under TUFTA. For the reasons stated under Count 2, the Court disagrees.

### E. Count 5: Sale of the Lake House (Against the BHT Trustee and Le Ann Mary Cyr Individually)

The Trustee alleges that on or about August 18, 2018, the BHT Trustee entered into an Earnest Money Contract to sell the Lake House. When the Trustee learned of the impending sale, he filed a motion seeking a temporary restraining order and a motion for expedited hearing (ECF Nos. 39, 40). In response, the BHT Trustee's counsel at the time filed a response whereby he represented on behalf of the BHT Trustee that the proceeds of the sale, except the first lien and usual closing expenses, will be retained by the BHT. (ECF No. 41). The Trustee alleges that contrary to such representation, the BHT Trustee requested that the closing of the sale of the Lake House be moved up to September 15, 2018, and directed that the proceeds of the sale in the amount

of $651,480.04 be immediately issued into two cashier's checks dated September 17, 2018, the

day before the scheduled hearing on the Trustee's request for a temporary restraining order.

The Trustee alleges that one check, in the amount of $166,747.49, was earmarked for

payment of Le Ann Cyr's delinquent taxes, while the other check, in the amount of $484,732.55

was earmarked for pre-payment of the BHT's 2017 taxes. Furthermore, the Trustee alleges that

on the same day, the BHT Trustee instructed her tax counsel to drive from San Antonio to

Horseshoe Bay, retain possession of the checks, and deliver them to the Internal Revenue Service.

According to the Trustee, her tax counsel complied. As a result of the sale proceeds being paid

out, the motion for the temporary restraining order became moot.

The Trustee asserts two causes of action with respect to the Lake House and the payments

made to the Internal Revenue Service from the proceeds of the Lake House:

1. The payments from the sale of the Lake House were prohibited post-petition
   transactions under 11 U.S.C. § 549(a).
2. As the beneficiary of the $166,747.49 payment, Defendant Le Ann Mary Cyr,
   Individually is liable for the value of the payment pursuant to 11 U.S.C. § 550(a)(1).

### 1.  Fraudulent Transfer under 11 U.S.C. § 548(e)(1) & TUFTA

The BHT Trustee argues that the Trust Code provides a complete bar to the Trustee's

claims under § 548(e) and TUFTA as a matter of law.[16] The Trustee, however, has only plead a

cause of action under § 549(a), and therefore the Court will not address the merits of the BHT

Trustee's argument as it relates to Count 5.

---

[16] The heading under section 5 of the BHT Trustee's Motion to Dismiss applies its discussion to Count 5. Paragraph
5.9 of the BHT Trustee's Motion to Dismiss, however, specifically limits its discussion to causes of action related to
§ 548 and TUFTA. (ECF No. 72, ¶ 5.9) ("Accordingly, the Chapter 7 Trustee cannot state a cause of action against
the Bergerud Trustee for violation of . . . 11 U.S.C. § 548(e) or [TUFTA].).

### 2.  Post-petition transaction under 11 U.S.C. § 549(a)

#### a.  Parties Contentions

Le Ann Cyr submits that the Trustee's § 549(a) claim fails as a matter of law because under the facts, as alleged by the Trustee, the BHT sold the Lake House and that the proceeds of such sale were paid to the IRS. Therefore, because the Lake House was not sold by Debtor, the proceeds of the Lake House sale that were allegedly transferred are not property of the estate and no recovery under § 550 is permissible. The Trustee asserts that the foundation for the Trustee's § 549(a) claim under Cout 5 is a finding that the Lake House was fraudulent transferred to the BHT under Count 4.

#### b.  Legal Analysis

Section 549(a) applies only to property of the estate. Property of the estate includes "[a]ny interest in property that the trustee recovers under . . . § 550." 11 U.S.C.A. § 541(a)(3). Section 550 enumerates circumstances under which a trustee may recover property or its value from the transferee of an avoided transfer. *Id*. at § 550(a). Such circumstances include transfers avoided under §§ 544 and 548. *Id*. Therefore, any property avoided by the Trustee subsequent to the commencement of the case under § 544 and 548 constitutes property of Debtor's estate.

Under Count 4, the Trustee seeks to avoid the Lake House as a fraudulent transfer under § 548(e)(1) and TUFTA.[17] Should the Trustee prevail under Count 4, the Lake House becomes property of the estate under § 541(a)(3) and therefore the proceeds its sale are subject to avoidance under § 549(a). While the Trustee does not expressly incorporate the allegations under Count 4 into Count 5, the Court would be remiss to not consider the factual allegations and causes of action under Count 4 when determining whether a claim for relief exists under Count 5. The Court,

---

[17] As previously mentioned, the Court recognizes the Trustee's power to assert a TUFTA cause of action under § 544.

however, agrees with Le Ann Cyr inasmuch as that if the Trustee does not prevail under Count 4, the Trustee's cause of action under Count 5 is not tenable.

As of the date of this Order, Count 4 has one remaining cause of action under TUFTA. The BHT Trustee moved to dismiss the Trustee's TUFTA claim under Count 4 on the basis that the Trust Code insulates Debtor's conveyances to BHT from creditors' reach. The Court rejected this argument. Because Count 4 has one remaining cause of action under which the Trustee could potentially prevail, dismissal of Count 5 is premature. As such, Le Ann Cyr's Motion to Dismiss is denied as to Count 5.

### F. Count 6: The BHT's Purchase of a Home for John and Carol Bergerud

The Trustee alleges that on or about March 7, 2013 a warranty deed was executed whereby Le Ann Cyr's parents, John and Carol Bergerud, acquired 80% interest in real property located at 3 Bishops Green (the "Bishops Green Property") with the remaining 20% interest in the property going to the BHT. The Trustee also alleges that in October 2014, John and Carol Bergerud transferred their ownership interest in the Bishops Green Property to the John and Carol Bergerud Living Trust. By default, and because the BHT did not join in the deed, the Trustee asserts that 20% of the Bishops Green Property still belongs to the BHT.

The Trustee asserts the following cause of action with respect to the transfer of the interest in the Bishops Green Property to the BHT:

1. The transfer of the interest in the Bishops Green Property to the BHT is a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).

### 1. Parties Contentions

The BHT Trustee asserts that the § 548(e) violation under Count 6 alleged by the Trustee has not been adequately plead because the Trustee does not properly allege a transfer of an interest of a debtor as required under § 548(e). Specifically, the BHT Trustee argues that the Trustee does

not explain how the transfer of an interest from a seller to the BHT is a transfer of an interest in Debtor in property. The Trustee contends that the transfer of the interest in the Bishops Green Property to the BHT was an indirect transfer by Debtor and therefore properly plead for purposes of § 548.

### 2. Legal Analysis

Using the principles articulated under Count 4, the Court agrees with the BHT Trustee. The Trustee has not plead Trustee has not properly alleged an indirect transfer of an interest of the Debtor. First, the Trustee does not identify the direct transfer. Specifically, the Trustee does not identify the third party who conveyed the interest in the Bishops Green Property to the BHT. The Trustee only alleges that the BHT acquired 20% interest in the Bishops Green Property. Second, the Trustee does not explain how Debtor caused the direct transfer. The Trustee alleges the BHT's purchase of the 20% interest was an enticement to John and Carol Bergerud to move from Virginia to San Antonio. These allegations alone, however, do not explain Debtor's role in the direct transfer. Finally, the Trustee does not allege facts demonstrating that Debtor ever had legal or equitable time to the Bishops Green Property such that the Property was an interest of the Debtor.

### G. Count 7: The BHT's Acquisition of the Cyrs' Residence in Spring, Texas

The Trustee alleges that on or about December 1, 2017, the BHT, the Debtor and Le Ann Cyr entered into an earnest money contract for purchase of certain real property in Spring, Texas (the "Spring House") for the purchase price of $3,333,000.00. The Trustee also alleges that Le Ann Cyr signed the earnest money contract both individually and as BHT Trustee and signed for Debtor. The Trustee asserts three causes of action with respect to the Spring House:

1. The transfer of the Spring House to the BHT was a fraudulent transfer under 11 U.S.C. § 548(a)(1).
2. The transfer was a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).

38

3.  The transfer of the Spring House was a fraudulent transfer sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.

**1.  Fraudulent transfer under § 548(e)(1)**

The BHT Trustee argues that the Trust Code provides a complete bar to the Trustee's claims under § 548(e) as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Trust Code, the Trustee may not avoid such transfers under 11. U.S.C. § 548(e). For the reasons stated under Count 2, the Court disagrees.

**2.  Fraudulent transfer under §§ 548(a)(1) and 548(e)(1)**

The BHT Trustee asserts that the § 548(e) violation under Count 7 alleged by the Trustee has not been adequately plead because the Trustee does not properly allege a transfer of an interest of a debtor as required under §§ 548(a)(1) and 548(e). [18]  The Trustee contends that the transfer of the interest to the BHT was an indirect transfer by Debtor and therefore properly plead for purposes of § 548.

Using the principles articulated under Count 4, the Court agrees with the BHT Trustee. The Trustee has not properly alleged an indirect transfer of an interest of the Debtor. First, the Trustee does not identify the direct transfer. Specifically, the Trustee does not identify the third party who conveyed the interest in the Spring House to the BHT. The Trustee only alleges that that Le Ann Cyr and Debtor entered into an earnest money contract for the purchase of the Spring House and that Le Ann Cyr signed the contract both individually and as the BHT Trustee, and signed for Debtor. Second, the Trustee does not explain how Debtor caused the direct transfer. The Trustee

---

[18] The BHT Trustee asserts in a heading (¶ 8) that Count 7 is not adequately plead on this basis; however, she does not provide a basis for the deficiency in the substance of her Motion. Out of an abundance of caution, and in a concentrated effort to keep the Parties focused on the merits of the proceeding, the Court will address the issue.

alleges that Le Ann Cyr signed the contract both individually and as the BHT Trustee, and signed for Debtor. There are no allegations describing the Debtor's role in the transaction other than the fact that Le Ann Cyr signed the earnest money contract on his behalf. Moreover, the Trustee does not allege why Debtor is bound by Le Ann Cyr signing on his behalf. Accordingly, these facts alone do not allow the Court to reasonably infer that Debtor caused the direct transfer.

Second, the Trustee does not allege facts demonstrating that Debtor had an interest in the property the Trustee seeks to avoid—the Spring House. The Trustee alleges LeAnn Cyr signed the earnest money contract for the Debtor but that the property was deeded by the seller to the BHT. As previously stated, the Trustee does not allege why Debtor is bound by Le Ann Cyr signing on his behalf. Even if the Trustee had alleged such facts, the Trustee does not allege facts explaining how the Debtor's rights under the earnest money contract translate to a legal or equitable interest in the Spring House belonging to Debtor.

### 3. Fraudulent transfer under Tex. Bus. & Com. Code sections 24.005 and 24.006

The BHT Trustee argues that the Trustee's claim to avoid the transfer of the Spring House under sections 24.005 and 24.006 is barred as a matter of law because the Spring House is not a self-settled asset under Texas law and therefore not subject to the claims of creditors. For reasons stated under Count 2, the Court disagrees.

### 4. Fraudulent transfer under 11 U.S.C. § 548(a)(1)

The BHT Trustee argues that a cause of action for the transfer of the Spring House under § 548(a)(1) fails to provide fair notice of the nature of the Trustee's allegations. Specifically, the BHT Trustee asserts that the cause of action does not indicate whether the Trustee is alleging that such transfer was done with actual intent to hinder, delay, or defraud under § 548(a)(1)(A) or whether such transfer was a constructively fraudulent transfer under § 548(a)(1)(B). Moreover, to

the extent that the Trustee alleges such a transfer was done with actual intent to hinder, delay, or defraud, the BHT Trustee argues that the Trustee's Original Complaint fails to satisfy Federal Rule of Civil Procedure 9(b) because the Trustee does not allege facts establishing the "how" and "why" the Spring House transfer were made with actual intent to hinder, delay, or defraud. Finally, to the extent the Trustee alleges such a transfer was a constructively fraudulent transfer under § 548(a)(1)(B), the BHT Trustee contends that the Trustee has failed to allege facts to support an allegation of insolvency as required under § 548(a)(1)(B)(ii).

With respect to the BHT Trustee's arguments regarding fair notice, the Court agrees for reasons stated under Count 2. Moreover, regarding her argument regarding allegations of facts regarding insolvency under § 548(a)(1)(B), the Court also agrees for reasons stated under Count 2. As to the BHT Trustee's argument that Count 7 does not satisfy Rule 9(b)'s requirement for specificity, the Court disagrees for reasons stated under Count 2.

## H.  Count 8: Transfer of Ownership of Oracle Research & Consulting, LLC

The Trustee alleges that Le Ann Cyr is the president of Oracle Research & Consulting, LLC ("Oracle"), a Wyoming limited liability company formed during her marriage with Debtor. The Trustee also alleges that she was previously 100% owner of Oracle, and that on January 4, 2017, she transferred all her ownership interest in Oracle, to the BHT. The Trustee also submits that her ownership interest in Oracle is community property that she owned with Debtor.

The Trustee asserts three causes of action with respect to Oracle:

1.  The transfer of interest of Oracle was a fraudulent transfer under 11 U.S.C. § 548(a)(1).
2.  The transfer was a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).
3.  The transfer was a fraudulent transfer sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.

### 1.  Fraudulent transfer under § 548(e)(1)

The BHT Trustee argues that the Trust Code provides a complete bar to the Trustee's claims under § 548(e) as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Trust Code, the Trustee may not avoid such transfers under 11. U.S.C. § 548(e). For the reasons stated under Count 2, the Court disagrees.

### 2.  Fraudulent transfer under Tex. Bus. & Com. Code sections 24.005 and 24.006

The BHT Trustee argues that the Trustee's claim to avoid the transfer of the Oracle ownership interest under sections 24.005 and 24.006 is barred as a matter of law because the ownership interests are not a self-settled asset under Texas law and therefore not subject to the claims of creditors. For reasons stated under Count 2, the Court disagrees.

### 3.  Fraudulent transfer under 11 U.S.C. § 548(a)(1)

The BHT Trustee argues that a cause of action for the transfer of the Oracle ownership interests under § 548(a)(1) fails to provide fair notice of the nature of the Trustee's allegations. Specifically, the BHT Trustee asserts that the cause of action does not indicate whether the Trustee is alleging that such transfer was done with actual intent to hinder, delay, or defraud under § 548(a)(1)(A) or whether such transfer was a constructively fraudulent transfer under § 548(a)(1)(B). Moreover, to the extent that the Trustee alleges such a transfer was done with actual intent to hinder, delay, or defraud, the BHT Trustee argues that the Trustee's Original Complaint fails to satisfy Federal Rule of Civil Procedure 9(b) because the Trustee does not allege facts establishing the "how" and "why" the transfer were made with actual intent to hinder, delay, or defraud. Finally, to the extent the Trustee alleges such a transfer was a constructively fraudulent

transfer under § 548(a)(1)(B), the BHT Trustee contends that the Trustee has failed to allege facts to support an allegation of insolvency as required under § 548(a)(1)(B)(i).

With respect to the BHT Trustee's arguments regarding fair notice, the Court agrees for reasons stated under Count 2. Moreover, with respect to her argument regarding allegations of facts regarding insolvency, the Court also agrees for reasons stated under Count 2. As to the BHT Trustee's argument that Count 7 does not satisfy Rule 9(b)'s requirement for specificity, the Court disagrees.

## I.  Count 9: Formation of SA Spine, LLC and Transfer of OSI's Assets and Business

The Trustee alleges that up until December 31, 2017, Debtor conducted his medical practice through Orthopedic & Spine Institute, LLC ("OSI") and prior to that, Debtor and/or Le Ann Cyr caused the formation of SA Spine, LLC ("SA Spine"), a Texas limited liability company, ownership of which was placed in the BHT. The Trustee also alleges that over the course of the remainder of 2017, Debtor caused OSI to transfer all of its assets and certain selected liabilities to SA Spine thereby rendering OSI an empty shell.

The Trustee asserts two causes of action with respect to formation of SA Spine and transfer of OSI's business and assets to SA Spine:

1. The transfer of the assets and business of OSI was a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).
2. The transfer of the Spring House was a fraudulent transfer sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.

### 1.  Fraudulent transfer under § 548(e)(1)

The BHT Trustee argues that the Trust Code provides a complete bar to the Trustee's claims under § 548(e) as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Trust Code, the Trustee may

not avoid such transfers under 11. U.S.C. § 548(e). For the reasons stated under Count 2, the Court disagrees.

### 2. Fraudulent transfer under 11 U.S.C. § 548(a)(1)

The BHT Trustee argues that a cause of action for the transfer of OSI's assets and business under § 548(a)(1) fails to provide fair notice of the nature of the Trustee's allegations. Specifically, the BHT Trustee asserts that the cause of action does not indicate whether the Trustee is alleging that such transfer was done with actual intent to hinder, delay, or defraud under § 548(a)(1)(A) or whether such transfer was a constructively fraudulent transfer under § 548(a)(1)(B). Moreover, to the extent that the Trustee alleges such a transfer was done with actual intent to hinder, delay, or defraud, the BHT Trustee argues that the Trustee's Original Complaint fails to satisfy Federal Rule of Civil Procedure 9(b) because the Trustee does not allege facts establishing the "how" and "why" the transfer was made with actual intent to hinder, delay, or defraud. Finally, to the extent the Trustee alleges such a transfer was a constructively fraudulent transfer under § 548(a)(1)(B), the BHT Trustee contends that the Trustee has failed to allege facts to support an allegation of insolvency as required under § 548(a)(1)(B)(ii).

With respect to the BHT Trustee's arguments regarding fair notice, the Court agrees for reasons stated under Count 2. Moreover, with respect to her argument regarding allegations of facts regarding insolvency, the Court also agrees for reasons stated under Count 2. As to the BHT Trustee's argument that Count 7 does not satisfy Rule 9(b)'s requirement for specificity, the Court disagrees.

### 3. Fraudulent transfer under §§ 548(a)(1) and 548(e)(1)

### i. Parties Contentions

The BHT Trustee asserts that the §§ 548(a)(1) and 548(e)(1) violations under Count 8 alleged

by the Trustee have not been adequately plead because the Trustee does not properly allege a transfer of an interest of a debtor as required under the statutes. Specifically, the BHT Trustee argues that even if the Trustee does allege Debtor had an interest in property of OSI, and even to the extent Debtor does have such interest in OSI, it is OSI who owns its property, not Debtor and therefore such property is not an interest of the debtor. The Trustee contends that the transfers at issue were indirect transfers effectively transferring the value of Debtor's membership interests in OSI to the BHT.

## ii. Legal Analysis

As a preliminary matter, the record is clear that prior to OSI's termination, Debtor was 100% owner of OSI. (ECF No. 195 at 7). *Humana,* 336 F.3d at 379 ("On a motion to dismiss, the court may properly consider the documents attached to or incorporated by reference in the plaintiff's complaint, facts of which judicial notice may be taken, and matters of public record."); *Flintkote*, 760 F.2d at 587 ("A court may take judicial notice of related proceedings and records in cases before the same court."). Therefore, the issue before the Court is not whether Debtor had an interest in OSI, but rather whether the assets and business of OSI constitute an interest of Debtor subject to avoidance by the Trustee.

Here, the Trustee seeks to avoid the transfer of OSI's assets and business. According to the Trustee's allegations, this property is property belonging to OSI. (ECF No. 61, ¶ 40) ("Over the remainder of 2017, the Debtor caused OSI to transfer all of its assets and certain selected liabilities to SA Spine.") In Texas, "[a] member of a limited liability company . . . does not have an interest in any specific property of the company." Tex. Bus. Org. Code Ann. § 101.106(b). Therefore, as sole member of OSI, Debtor had no interest in the assets and business transferred from OSI to SA

Spine. Accordingly, the Court agrees that the Trustee has failed to allege that a transfer of an interest of the debtor.[19]

The Trustee cites the Court to a number of cases that stand for the proposition that where business assets and operations were transferred from one entity to another rendering the transferor-entity worthless, such transfer are indirect transfers effectively transferring the value of the membership interests and therefore constitute a transfer of an interest of a debtor. ***DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer***, 869 F.3d 839 (9th Cir. 2017); ***In re Nickeson***, Bankr. No. 13-10137, Adv. No. 14-1004, 2014 WL 668524 (Bankr. D.S.D. Nov. 25, 2014. Neither of these cases involve an analysis under Texas law and therefore, the Court declines to follow them. The Court must look to state-law to define the rights of Debtor and OSI. ***Butner v. U.S.***, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interest party is involved in a bankruptcy proceeding."). Under Texas law, absent other circumstances, Debtor has no ownership interest in property owned by OSI.

The Trustee encourages the Court to use its equity powers to "delve behind the form of the transactions and relationships to determine the substance." (ECF No. 97, ¶ 24). This Court will not use its equity powers to override the law. While this Court may be a court of equity, this Court is of the opinion that equity follows the law.

---

[19] The Court notes that the Trustee also seeks to avoid this transfer under 11 U.S.C. § 548(e)(1)—a transfer to a "self-settled trust or similar device." The Trustee contends that the BHT is such a self-settled trust or similar device. The Trustee also alleges that the assets and business of OSI was transferred to SA Spine, a Texas limited liability company, ownership of which was placed in the BHT. In Texas, a member of a limited liability company does not have an interest in property belonging to the company. Because the BHT is a member of SA Spine, and it is SA Spine who is the transferee of OSI's assets and business, the BHT does not have an ownership interest in such property.

**4. Fraudulent transfer under Tex. Bus. & Com. Code sections 24.005 and 24.006**

The BHT Trustee argues that the Trustee's claim to avoid the transfer of OSI's business and assets to SA Spine under sections 24.005 and 24.006 is barred as a matter of law because the such property is not self-settled under Texas law and therefore not subject to the claims of creditors. For reasons stated under Count 2, the Court disagrees.

**J. Count 10: Formation of S&L BHT, LLC and transfer of Oracle's Assets and Business**

The Trustee alleges that on or about August 8, 2017, Debtor and/or his spouse caused the formation of S&L BHT, LLC ("S&L BHT"), ownership of which was placed in the BHT. The Trustee also alleges that Debtor and/or his spouse are diverting the business and assets of Oracle to S&L BHT, which now has a substantial income.

The Trustee asserts two causes of action with respect to formation of S&L BHT and transfer of Oracle's business and assets to S&L BHT:

1. The transfer of the assets and business of Oracle to S&L BHT was a fraudulent transfer to a "self-settled trust or similar device" under 11 U.S.C. § 548(e)(1).
2. The transfer was a fraudulent transfer sections 24.005 and 24.006 of the Tex. Bus. & Com. Code.

**1. Fraudulent transfer under § 548(e)(1)**

**a. Barred by the Texas Trust Code**

The BHT Trustee argues that the Trust Code provides a complete bar to the Trustee's claims under § 548(e) as a matter of law. Specifically, the BHT Trustee submits that because conveyances to BHT are insulated from creditors' reach under the Trust Code, the Trustee may not avoid such transfers under 11. U.S.C. § 548(e). For the reasons stated under Count 2, the Court disagrees.

### b.  Transfer of Interest of the Debtor

**i.  Parties Contentions**

The BHT Trustee asserts that the §§ 548(a)(1) and 548(e)(1) violations under Count 10 alleged by the Trustee have not been adequately plead because the Trustee does not properly allege a transfer of an interest of a debtor as required under §§ 548(a)(1) and 548(e)(1).  The Trustee contends that the transfers at issue were indirect transfers effectively transferring the value of Debtor's membership interests in OSI to the BHT.

**ii.  Legal Analysis**

Here, the Trustee seeks to avoid the transfer of Oracle's assets and business to S&L BHT. According to the Trustee's allegations, this property is property belonging to Oracle. The Trustee identifies Oracle as an LLC and identifies the BHT as Oracle's owner. (ECF No. 61, ¶ 38). As previously explained, in Texas, "[a] member of a limited liability company . . . does not have an interest in any specific property of the company." Bus. Org. Code § 101.106(b). Therefore, as a member of Oracle, the BHT had no interest in the assets and business transferred from Oracle to S&L BHT.  Stated differently, Oracle owned the assets and business transferred to S&L BHT. Accordingly, the Court agrees that the Trustee has failed to allege that a transfer of an interest of the debtor.

### 2.  Fraudulent transfer under 11 U.S.C. § 548(a)(1)

The BHT Trustee argues that the Trustee's claims under § 548(a)(1) have not been plead with sufficient specificity. The Trustee, however, has only not plead a cause of action under § 548(a)(1) with respect to Count 10, and therefore the Court will not address the merits of the BHT Trustee's argument as it relates to Count 10.

### 3. Fraudulent transfer under Tex. Bus. & Com. Code sections 24.005 and 24.006

The BHT Trustee argues that the Trustee's claim to avoid the transfer of OSI's business and assets to SA Spine under sections 24.005 and 24.006 is barred as a matter of law because the such property is not self-settled under Texas law and therefore not subject to the claims of creditors. For reasons stated under Count 2, the Court disagrees.

## CONCLUSION

For the foregoing reasons as articulated under each Count, the Court concludes the following:

The BHT Trustee's Motion to Dismiss is granted as to Count 1 because the Trustee seeks relief he is not entitled to as a matter of law.

The BHT Trustee's Motion to Dismiss is denied as to Counts 2, 3, 4, 7, 8, 9, and 10 because the Court finds that the Trustee's cause of action under § 548(e)(1) is not subject to a determination of whether the assets transferred are self-settled under the Trust Code. The BHT Trustee's also seeks to dismiss Count 5 for the same reasons. As Count 5 has not alleged a cause of action under § 548(e)(1), the BHT Trustee's Motion to Dismiss as to Count 5 for those reasons is denied.

The BHT Trustee's Motion to Dismiss is granted as to the Trustee's § 548(a)(1) Counts 2, 7, 8, and 9 because the Court finds that the Trustee does not properly plead with specificity (1) which claims under § 548(a)(1) the Trustee is asserting and (2) actual intent to hinder, delay, or defraud present or future creditors. The BHT Trustee's also seeks to dismiss Count 10 for the same reasons. As Count 10 has not alleged a cause of action under § 548(a)(1), the BHT Trustee's Motion to Dismiss as to Count 10 for those reasons is denied.

The Trustee and BHT Trustee agreed that BHT Trustee's Motion to Dismiss is granted as to the Trustee's § 548(a)(1) claims under Counts 3 and Counts 4 because they are time-barred. The

BHT Trustee's Motion to Dismiss Count 6 on the basis that it is time-barred under § 548(a)(1) is denied because the Trustee does not assert a § 548(a)(1) under Count 6.

The Trustee has fourteen (14) days from the date of entry of this Order to exercise his right to Amend his Original Complaint.

IT IS THEREFORE ORDERED that the Trustee of the Bergerud Heritage Trust's Motion to Dismiss the Original Complaint of Plaintiff Jose Rodriguez, In His Capacity as Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr (ECF No. 72) is GRANTED IN PART, AND DENIED IN PART.

IT IS FURTHER ORDERED that Le Ann Mary Cyr's Motion to Dismiss the Original Complaint of Plaintiff Jose Rodriguez, In His Capacity as Chapter 7 Trustee of the Estate of Steven Jeffrey Cyr (ECF No. 99) DENIED.

IT IS FURTHER ORDERED that Trustee has fourteen (14) days from the date of entry of this Order to exercise its right to amend his Original Complaint.

###